**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID LEMUS, CDCR #K-84252, <br><br> Plaintiff, <br><br> vs. <br><br> T. GUTIERREZ, et al., <br><br> Defendants. | Case No. 17cv1500-MMA (JLB) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 46] |

    Plaintiff David Lemus, a California prisoner proceeding *pro se*, brings this civil rights action against two prison officials and a medical professional alleging violations of his Eighth Amendment rights. *See* Doc. No. 28. Defendants T. Gutierrez, A. Hernandez, Jr., and Dr. S. Ko move for summary judgment as to the merits of Plaintiff's claims. *See* Doc. No. 46. Additionally, Dr. Ko seeks summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before filing suit. *See id.* The Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). *See* Doc. No. 47. Plaintiff filed a response in opposition to the motion, to which Defendants replied. *See* Doc. Nos. 48, 49. Subsequently, the Court granted Plaintiff leave to file a sur-reply. *See* Doc. No.

54. The Court took the matter under submission on the briefs pursuant to Civil Local Rule 7.1.d.1 and Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment as to the merits of Plaintiff's claims.

## PLAINTIFF'S ALLEGATIONS

On October 17, 2016, Plaintiff and his cellmate, Rickey Cruz, were "summoned for court appearance at the administrative building." Doc. No. 28 at 3.[1] Plaintiff claims that they were both "accosted by" Defendants Gutierrez and Hernandez who handcuffed them behind their backs "for transport" via a cart. *Id.* Cruz was permitted to "sit on a passenger seat in the front of the cart" while Plaintiff was told to "sit on a makeshift plywood seat at the back." *Id.* Defendant Gutierrez was the "driver of the cart" and Plaintiff claims he drove "fast on the road and rounding corners." *Id.* While Hernandez was "hanging onto the side of the cart," Plaintiff claims he "didn't have anything to grab, as he started sliding off of the cart." *Id.* Plaintiff yelled for Gutierrez to stop but "was ignored." *Id.* Plaintiff alleges Defendant Gutierrez "continued driving fast, then turned a corner that threw Plaintiff from the cart." *Id.* "Instead of stopping, both defendants kept going" because they wanted to "make sure Plaintiff's cellmate wasn't late for court." *Id.* As a result, Plaintiff claims he was "tossing and turning in pain on the pavement for many minutes before both defendants appeared in hostile fashion." *Id.*

Plaintiff contends Defendants Gutierrez and Hernandez "refused to activate their alarms for medical attention" on his behalf. *Id.* However, they "took it upon themselves to snatch him up" and attempted to "place him in the cart for court." *Id.* Plaintiff alleges that he told Gutierrez and Hernandez he was in "excruciating pain" but they "ignored him by saying that he had to get to court." *Id.* at 4. However, "after medical personnel started yelling for the defendants to take Plaintiff to the infirmary, they retrieved a wheelchair"

---

[1] Citations to electronically-filed documents refer to the pagination generated by the CM/ECF system.

and took Plaintiff to the Correctional Treatment Center ("CTC"). *Id.*

At the CTC, Dr. Seeley[2] examined Plaintiff and directed that Plaintiff be taken to the El Centro Regional Medical Center ("ECRMC") by ambulance. *See id.* At ECRMC Dr. Kajitani[3] examined Plaintiff and "diagnosed Plaintiff's condition as suffering from forearm hematoma, closed head injury [without] cranial wound and thoracic myofascial strain." *Id.* Plaintiff was provided with an "arm brace." *Id.* However, when Plaintiff returned to prison, "Defendant Ko confiscated Plaintiff's arm brace without replacing it or accommodating his medical needs associated with forearm hematoma." *Id.* Plaintiff "expressed that he was in tremendous pain" but Dr. Ko purportedly "indicated that he would be alright." *Id.* As Plaintiff "continued to express discomfort with his arm," he claims Dr. Ko "told him that the matter was beyond his control." *Id.*

Based on these allegations, Plaintiff seeks various forms of injunctive and declaratory relief as well compensatory and punitive damages. *See id.* at 6.

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a

---

[2] Dr. Seeley is not a defendant in this action.

[3] Dr. Kajitani is not a defendant in this action.

reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (internal quotation marks omitted). In applying the standard set forth under Rule 56, district courts must "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

When a defendant seeks judgment based on the plaintiff's failure to exhaust administrative remedies prior to filing suit, the defendant must prove that there was an available administrative remedy which the plaintiff failed to exhaust. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). If they do, the burden of production then shifts to the plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1191; *see also McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) (citing "circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable.").

### DISCUSSION

**I.     Exhaustion**

As an initial matter, Dr. Ko seeks summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) before filing suit.

A.     <u>Legal Standards for Exhausting Administrative Remedies</u>

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]"

*Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable.").

Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738); *see also Williams*, 775 F.3d at 1191 ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino v. Baca*, 747 F.3d 1162, 1171) (9th Cir. 2014) (quotation marks omitted)). In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is *not* capable of use to obtain relief." 136 S. Ct. at 1859 (emphasis added). These circumstances arise when: (1) the "administrative procedure . . .

operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use ... so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted).

Applying these principles, the Ninth Circuit has specifically found that "[w]hen prison officials fail to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA." *See Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) (per curiam) (finding RJD's 6-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable); *accord Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006) (officials' failure to respond to a "timely complaint that was never received" rendered prisoner's administrative remedies unavailable). The Ninth Circuit has further found administrative remedies "plainly unavailable" where prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and "effectively unavailable" where they provide the inmate mistaken instructions as to the means of correcting a claimed deficiency, but upon re-submission, reject it as untimely after compliance proved impossible. *See Nunez*, 591 F.3d at 1226. Administrative remedies may also prove unavailable if the prisoner shows an "objectively reasonable" basis for his belief that "officials would retaliate against him if he filed a grievance." *McBride*, 807 F.3d at 987.

B. <u>CDCR's Exhaustion Requirements</u>

With respect to the initial burden on summary judgment, the Court finds Dr. Ko has offered sufficient evidence, which Plaintiff does not contradict, to prove that the California Department of Corrections and Rehabilitation ("CDCR") has established an "administrative remedy" for prisoners like Plaintiff to pursue before filing suit under § 1983. *See Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation

marks omitted).

Specifically, a California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." CAL CODE REGS., tit. 15 § 3084.1(a). Since January 28, 2011, and during the time period encompassing the events at issue in this case, Title 15 of the California Code of Regulations has required three formal levels of appeal review. *See* Gibson Decl., Doc. No. 46-7 at ¶¶ 2-5. Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," CAL. CODE REGS., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a).

If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days . . . upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). "The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated."[4] *Id.* § 3084.1(b); *see also* CDCR

---

[4] For example, "[a] second level of review shall constitute the department's final action on appeals of disciplinary actions classified as 'administrative' as described in section 3314, or minor disciplinary infractions documented on CDC[R] Form 128-A (rev. 4-74), Custodial Counseling Chrono, pursuant to

7

OPERATIONS MANUAL § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

C. <u>Analysis</u>

Dr. Ko argues that Plaintiff did not timely file an administrative grievance against him. It is undisputed that the CDCR exhaustion requirements require an inmate to "file a grievance within thirty calendar dates of the incident being appealed." *See* Gibson Decl. at ¶ 5 (citing CAL. CODE REGS., tit. 15 § 3084.8). The factual allegations made by Plaintiff against Dr. Ko arise from events that are alleged to have occurred on October 17, 2016. *See* Findley Decl., Doc. No. 46-5, Pl. Dep 104:23 – 105:5. Dr. Ko argues that Plaintiff did not "submit his appeal related to Dr. Ko until January 17, 2017, three months after Dr. Ko removed his brace." Def. Memo. at 22.

Dr. Ko submits the declaration of S. Gates, Chief of the Health Care Correspondence and Appeals Branch ("HCCAB"), "formerly named the Inmate Correspondence and Appeals Branch," which is "part of California Correctional Health Care Services ("CCHCS")." Gates Decl., Doc. No. 46-6 at ¶ 1. "All levels of health care appeals are tracked through a computer database known as the Health are Appeals and Risk Tracking System ("HCARTS"). *Id.* at ¶ 4. Gates was directed to conduct a "review of inmate health care appeals in the HCARTS database regarding David Lemus, CDCR No. K-84252" and to locate "any health care appeals relating to allegations of deliberate indifference to medical care or negligent or improper medical care against Dr. Ko, for any reason, including, but not limited to confiscating Plaintiff's arm brace." *Id.* at ¶ 7.

According to Gates, Plaintiff submitted a grievance on January 17, 2017 which was designated "Health Care Appeal Log No. CEN-HC-17027852." *Id. at* ¶ 7(a). In this

---

section 3312(a)(2), and shall exhaust administrative remedy on these matters." CAL. CODE REGS., tit. 15 § 3084.7(b)(1).

8

17cv1500-MMA (JLB)

grievance, Plaintiff requested that his "arm brace be returned to him a.s.a.p," that he receive "appropriate care for his ongoing pain," and to be "evaluated by another physician." *Id.*, Ex. B, Doc. No. 46-6 at 12. Plaintiff also claimed, "Dr. Ko confiscated" his arm brace "without legitimate reason." *Id.* at 14. The appeal was "cancelled" at the first level of review on January 19, 2017 because the "time limits for submitting the appeal [were] exceeded even though" Plaintiff "had the opportunity to submit within the prescribed time restraints." *Id.* at 16. In addition, it was also found that the "appeal makes a general allegation, but fails to state facts or specify an act or occasion consistent with the allegation." *Id.*

On February 9, 2017, J. Lewis, "Deputy Director of Policy and Risk Management Services," informed Plaintiff that it "has been determined your appeal submitted for Director's Level Review does not comply with appeal procedures" and is "being cancelled and returned" to Plaintiff." *Id.* at 11.

Plaintiff argues that he "submitted his 602 appeal against Defendant Ko in November 2016 but received no response." Pl.'s Sur-Reply at 7. Plaintiff further claims that on January 3, 2017, he "forwarded an inquiry to the medical appeals coordinator who told him to resubmit the appeal for processing." *Id.* at 7-8. Plaintiff has attached to his Declaration in opposition to Defendants' motion, signed under penalty of perjury, a copy of a letter to the "appeals coordinator" dated January 3, 2017, with the subject heading "unheard 602 appeal." Pl.'s Decl., Doc. No. 54 at 29. This letter is stamped "CEN-Received Jan 6 2017 HC Appeals." *Id.* In this correspondence, Plaintiff writes: "Please take notice that I submitted to your office a medical 602 appeal against Dr. Ko, for confiscating my arm brace and denying me medical care." *Id.* He further claims that the "appeal was submitted about a month and a half ago, nevertheless, I never received notice that it was processed by your office." *Id.*

Plaintiff also attaches a copy of a "Memorandum" dated January 9, 2017 from "T. Kirby, Health Care Appeals Coordinator" which contains the subject heading "[r]eceipt of letter dated 1/3/2007." *Id.* at 30. In the body of this memorandum, it is stated that

they are responding to Plaintiff's January 3, 2017 letter and informed Plaintiff that a "review of your medical appeals history was conducted and there is no Centinela appeal." *Id.* Plaintiff was specifically instructed to "re-write your appeal and submit it in a U-Sav-Em envelope, attention R. Kirby, Medical Appeals Coordinator." *Id.* In addition, Plaintiff was informed that "although time constraints may have expired, we will process your appeal when it is received." *Id.*

As noted above, "the [D]efendant[s]' burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. The burden then shifts to Plaintiff "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *Albino*, 747 F.3d at 1172; *Jones*, 549 U.S. at 218. He may do so by "showing the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Albino*, 747 F.3d at 1172 (citation omitted); *see also Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (noting potential "unavailability" of administrative remedies if officials "obstruct[ed] [the prisoner's] attempt to exhaust," or "prevented [him] from exhausting because procedures for processing grievances weren't followed."); *Nunez*, 591 F.3d at 1224 (finding prisoner's lack of exhaustion "excused" where record showed he "took reasonable and appropriate steps to exhaust … [but] was precluded from exhausting, not through his own fault but by the Warden's mistake.")

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross,* 136 S. Ct. at 1858; *Andres*, 854 F.3d at 1104. Here, the Court is unable to conclude as a matter of law that Plaintiff failed to properly exhaust his administrative remedies against Dr. Ko. In the memorandum sent to Plaintiff by T. Kirby, he was specifically instructed to "re-write [his]appeal and submit" the appeal to the attention of "T. Kirby, Medical Appeals Coordinator." Pl.'s Sur-Reply at 30. Plaintiff was further informed that while "time constraints may have expired, we will

process your appeal when it is received." *Id.* It is undisputed that Plaintiff complied with this directive and resubmitted his appeal regarding Dr. Ko on January 17, 2017. *See id.* at 31. However, despite T. Kirby's purported directive that they would "process [Plaintiff's] appeal when it is received," even though "time constraints may have expired," this appeal was not "processed" but rather was "cancelled" due to time constraints. *Id.* at 31-32.

Plaintiff's sworn testimony, when viewed in the light most favorable to Plaintiff, satisfies Plaintiff's burden of production under *Albino* and *Williams* insofar as it shows that administrative remedies were not "available" to him because officials "thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, … in [his] individual case." *Ross*, 136 S. Ct. at 1862; *see also Williams*, 775 F.3d at 1191 (unavailability may be shown if grievance process, as administered "through machination," proved "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." (quoting *Albino*, 747 F.3d at 1172) (internal citation omitted).

Because "the defendant[s] in a PLRA case must plead and prove non-exhaustion as an affirmative defense," and it is not clear as a matter of law whether Plaintiff failed to exhaust the remedies made "available" to him, the Court finds that summary judgment pursuant to 42 U.S.C. § 1997e(a) is not warranted, and "the case may proceed to the merits." *Albino*, 747 F.3d at 1171; *Williams*, 775 F.3d at 1192 ("[P]ermitting a defendant to show that remedies existed in a general sense where a plaintiff has specifically alleged that official action prevented [him] from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear.") (quoting *Albino*, 747 F.3d at 1172).

**II.     Eighth Amendment Claims against Defendants Hernandez and Gutierrez**

Prison officials display a deliberate indifference to an inmate's well-being when they know of and consciously disregard an excessive risk of harm to that inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Thus, "deliberate indifference" entails something more than mere negligence, but may be satisfied with proof of something less than acts or omissions "for the very purpose of causing harm," or that a particular official "acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

To show that a prisoner has been subject to cruel and unusual punishment by an officer's failure to protect him, he must point to evidence in the record which shows that the alleged deprivation was objectively "sufficiently serious," *i.e.*, that the conditions he faced posed a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted); *see also Hudson*, 503 U.S. at 5, 8.

The failure to protect claim against Defendants Hernandez and Gutierrez arises out of the allegations that they placed Plaintiff on a golf cart in handcuffs, Plaintiff was thrown from the cart as a result of Gutierrez driving too fast, and "took it upon themselves to snatch him up" after he fell off the car. FAC at 3. Defendant Hernandez declares that he did place Plaintiff in the golf car while in handcuffs but prior to this incident he was "not aware of an inmate ever falling off the back of a cart." Hernandez Decl., Doc. No. 46-9 at ¶ 3. Likewise, Defendant Gutierrez declares that he had "driven that cart numerous times with inmates sitting in the back in the same manner as [Plaintiff]" but he had "never had an inmate fall out of the back of the cart" before Plaintiff. Gutierrez Decl., Doc. No. 46-8 at ¶ 3. In addition, Gutierrez declares that he was "not aware of an inmate ever falling off the back of a cart prior to this incident." *Id.*

Plaintiff does not dispute these assertions. While he generally states that the declarations of Hernandez and Gutierrez are "based on lies and further coverups," he

12

17cv1500-MMA (JLB)

does not point to any evidence in the record that would contradict the assertion that they were unaware of any prior incidents of inmates falling off the golf carts. Pl.'s Sur-Reply at 5. In fact, Plaintiff argues that "as a direct result of the above incident, all staff personnel underwent training on the use of carts, while banning transportation of cargo cart for passenger use." *Id.* The fact that there was training and new regulations instituted *after* Plaintiff's fall from the cart supports the argument that Defendants were unaware of a serious risk to Plaintiff's safety. At best, Plaintiff's claims support a finding of negligence which is not enough to establish a deliberate indifference. *See Farmer*, 511 U.S. at 842 (deliberate indifference entails something more than mere negligence). Thus, the Court finds that there is no triable issue as to whether either Defendant had the "requisite knowledge of a substantial risk" to Plaintiff's safety when they used a golf cart to transport Plaintiff. *Farmer*, 511 U.S. at 842.

Plaintiff also claims that after he fell from the cart, there was a delay by Defendants in providing him with assistance. He alleges that after he fell, Gutierrez "shouted repeatedly for Plaintiff to stand up, but when he didn't he forced him up against his cries of pain, then forced him into the cart." Pl.'s Sur-Reply at 5. He further claims Hernandez "stood by watching and allowed Defendant Gutierrez to man handle Plaintiff without intervention of any kind." *Id.* However, in Plaintiff's deposition he testified that once the cart stopped, Hernandez approached Plaintiff and asked him "are you all right? Can you get up?" Pl.'s Dep. At 72:19-22. Plaintiff testified he told Hernandez he was in pain. *See id.* at 77:22. Plaintiff testified that Gutierrez then told him to "get up." *Id.* at 78:8-9. When Plaintiff told Gutierrez he was in pain, he testified that Gutierrez "yanked" him up and had Plaintiff walk to the cart. *Id.* at 78:11-19. Gutierrez had Plaintiff sit in the cart again and he "drove him to CTC." *Id.* at 82:11-16.

Plaintiff argues that the risk of pulling him up to standing after the fall was "obvious" due to the fact that he "showed discoloration and scratch marks to many parts of his body." Pl.'s Sur-Reply at 6. While there may have been a risk that Plaintiff would suffer an additional injury when he was picked up off the ground by Gutierrez, he does

13

not identify an injury or provide any evidence that he suffered an injury from this action.

Plaintiff also claims that both Defendants "refused to activate their alarm for medical attention on [his behalf]." Pl.'s Decl. at ¶ 13. However, there are no allegations, or any evidence introduced, to raise a triable issue of material fact as to whether the purported failure to "activate" an alarm caused a delay in treatment for Plaintiff or any harm as a result of the purported delay. Delays in providing care, without more, are insufficient to constitute an Eighth Amendment violation. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

In sum, the Court finds that Plaintiff has not presented evidence to rebut Defendants' showing that they were not "deliberately indifferent" to a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Accordingly, Defendants Hernandez and Gutierrez are entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

### III. Eighth Amendment Claim against Defendant Ko

Following his fall from the golf cart and preliminary examination at the prison's CTC, Plaintiff was taken to "El Centro Regional Medical Center." FAC at 4. While there, Plaintiff was examined and provided treatment which included an "arm brace." *Id.* It is undisputed that when Plaintiff returned to CEN, Dr. Ko "confiscated Plaintiff's arm brace." *Id.*; Ko Decl., Doc. No. 46-10 at ¶¶ 3-4.

The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Medical" needs include a prisoner's "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that a defendant's medical treatment placed the prisoner at risk of "objectively, sufficiently serious" harm, and that the defendant had a "sufficiently culpable state of mind" when he

14

17cv1500-MMA (JLB)

either provided or denied the prisoner medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted).

Dr. Ko does not dispute Plaintiff's assertions that he was the party responsible for "order[ing] staff to remove the brace" upon Plaintiff's return from the outside hospital. Ko Decl. at ¶¶ 3, 4. The records supplied by the parties in this action also show that Plaintiff was examined by Dr. Ko the day after Plaintiff fell from the golf cart on October 18, 2016. *See* Pl.'s Sur-Reply, Ex. 8, at 27, Medical Progress Note dated Oct. 18, 2016; Ko Decl. at ¶ 5. Dr. Ko told Plaintiff that the brace was not "medically necessary" and offered "an ace wrap in place of the brace" which Plaintiff "declined." *Id.* at ¶ 6. Dr. Ko also prescribed Plaintiff "Carbamazepine and Naproxen for the pain and swelling." *Id.*

Plaintiff argues that Dr. Ko "fail[ed] to provide ice packs" or provide him "with something to elevate his forearm." Pl.'s Sur-Reply at 6-7. However, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez,* 891 F.2d at 242. Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Plaintiff's own claims, and the evidence he has submitted, indicates that Dr. Ko disagreed with the treatment Plaintiff was provided at the outside hospital and it also indicates that Plaintiff was provided medical treatment by Dr. Ko. Plaintiff acknowledges that he was offered an "ace wrap in place of the arm brace" and he provides no evidence or allegations contradicting Ko's assertion that he was provided with pain medication. Pl.'s Decl., Doc. No. 54 at 15. Where a plaintiff demonstrates "nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law to establish deliberate indifference." *Jackson*, 90 F.3d at 332. Plaintiff would have to be able to demonstrate that the treatment plan provided was "medically unacceptable under the circumstances" and that his medical treatment was chosen "in conscious disregard of an excessive risk"

to his health. *Id.* There is no evidence in the record that the treatment provided to Plaintiff was "medically unacceptable." *Id.*

The Court finds that there is no genuine issue of material fact as to whether Dr. Ko acted with deliberate indifference in his treatment of Plaintiff's medical condition. *See Farmer*, 511 U.S. at 834. Plaintiff has provided no evidence to dispute Dr. Ko's showing that he provided Plaintiff with adequate treatment for his medical condition. Accordingly, Dr. Ko is entitled to summary judgment as to Plaintiff's Eighth Amendment claim.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment as to the merits of Plaintiff's Eighth Amendment claims.[5] The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATE: June 17, 2019

HON. MICHAEL M. ANELLO
United States District Judge

---

[5] Defendants also move for summary judgment on the ground that they are entitled to qualified immunity. *See* Def. Memo. at 23-24. Because the Court has found that Defendants are entitled to summary judgment as to the merit of Plaintiff's claims, it need not reach any issues regarding qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.")